**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

JEROME MCCARDELL #335-1936
                Plaintiff             :

               v.                    :   CIVIL ACTION NO. DKC-12-958

FRANK B. BISHOP, JR., et al.,   :
                Defendants

## MEMORANDUM OPINION

### I. Procedural History

This 42 U.S.C. § 1983 prisoner civil rights action seeks money damages for the alleged denial of proper medical care.[1] Jerome McCardell ("McCardell"), a Maryland Division of Correction ("DOC") prisoner housed at Western Correctional Institution ("WCI"), claims that he was denied a dressing change for wound care on June 21, 2011. McCardell, a paraplegic confined to a wheelchair, states that he "complained to Correctional Officer Faulkner"[2] that he needed to go to medical to receive a dressing change for ... wound care" and that "Corizon

---

[1] McCardell complains that the alleged denial of medical care also violated his rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 et seq. ("ADA") and the Rehabilitation Act of 1973, 29 U.S.C. A., § 701 et seq. ("RA"). ECF No. 1 at 4-5. To establish a prima facie case under Title II of the ADA, he would have to show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason Univ.,* 411 F.3d 474, 498 (4th Cir.2005); *Baird v. Rose,* 192 F.3d 462, 467 (4th Cir.1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131 et seq. A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade County,* 480 F.3d 1072, 1082 (11th Cir.2007). There is no showing that the ADA or RA are implicated in the claim concerning a bandage change at issue here. Assuming McCardell is disabled within the meaning of the ADA or RA, there is no evidence that he was discriminated against because of a disability.

McCardell also complains the health care provider has breached its contract with the Maryland Division of Correction ("DOC") to provide prisoner medical care. ECF No. 1 at 5. McCardell is not a party to the contract and cannot present such a claim on the DOC's behalf.

[2] Faulkner is not named as a defendant in this lawsuit.

medical personnel showed deliberate indifference" to his medical condition by allowing him to "suffer in pain from 4:00 a.m. until 1: 00 p.m."  ECF No. 1 at 3.

Frank B. Bishop, Jr., WCI's Warden ("Correctional Defendant") and Doctor Ava Joubert, Director of Nursing Janice Gilmore, and their employer, Corizon, Inc.[3] ("Medical Defendants") have filed Motions to Dismiss or, in the Alternative, for Summary Judgment.  ECF Nos. 18 and 20.  McCardell has filed opposition materials.[4]  ECF No. 23.  A hearing is not needed to resolve the constitutional issues presented in the matter.[5]  *See* Local Rule 105.6. (D. Md. 2011).  For reasons which follow, Defendants' Motions shall be granted.

## II.    Standard of Review

**Motion for Summary Judgment**

Under the December 10, 2010 revisions to Fed. R. Civ. P. 56(a):

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

---

[3] Corizon previously did business as Correctional Medical Services, Inc. ("CMS").

[4] On May 25, 2012, McCardell filed correspondence complaining that he had not received wound dressing changes since May 11, 2012. ECF No. 9. On July 25 and August 15, 2012, he complained of a lack of follow-up care concerning a urinary tract infection. ECF Nos. 17 and 22. These claims fall well outside the June 21, 2011 incident at issue here. While McCardell is free to file a new civil rights action concerning these subsequent alleged denials of medical care, these claims shall not be addressed by this court at this time.

[5] McCardell also requests appointment of counsel. ECF No. 1 at 5 and ECF No. 23 at 3. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by *Mallard v. U.S. District Court*, 490 U.S. 296, 298 (1989). Where a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Upon careful consideration of the motions and previous filings by McCardell, the court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the court are not unduly complicated and no hearing is necessary to the disposition of this case. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent McCardell under §1915(e)(1).

> of law. The court should state on the record the reasons for granting or denying the motion.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Eighth Amendment Right to Medical Care**

In alleging a denial of his Eighth Amendment right to necessary medical care, McCardell must prove two essential elements. First, he must satisfy the "objective" component by illustrating a serious medical condition. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). If he proves this first element, McCardell must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of Defendants. *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991)

(holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837. Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d at 167.

### III. Analysis

#### Correctional Defendant

McCardell's Eighth Amendment claim against Bishop[6] appears to be based on McCardell's belief that the Warden has supervisory authority over prison medical personnel and thus can be liable for damages, a doctrine known as respondeat superior. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

---

[6] McCardell implies that Bishop is liable for damages under the ADA and RA, because WCI receives federal monies. ECF No. 23 at 3. As previously noted, McCardell has not established a claim under the ADA or the RA.

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Bishop avers that he has no authority to dictate the kind of medical treatment to be provided by contractual health care providers and that he neither interfered with nor delayed the provision of health care to McCardell. ECF No. 18, Declaration of Frank B. Bishop, Jr. Simply put, the Warden does not supervise the contractual health care providers. McCardell thus fails to establish liability on the part of Warden Bishop.

Medical Defendants

McCardell claims he has established liability against the Medical Defendants because the Commissioner of Correction found his Administrative Remedy Procedure ("ARP") complaint concerning a May 19, 2011 complaint regarding health care was meritorious in part.[7] ECF No. 23 at 1-2. He baldly asserts that Dr. Joubert and Nurse Gilmore conspired in a "cover up" to discriminate against him because of his disability by denying "medical care when it was needed the most." ECF No. 1 at 4-5.

---

[7] The ARP materials are attached to ECF No. 1, and demonstrate that McCardell filed an ARP concerning a May 23, 2011 incident wherein he refused treatment because he did not wish to be handcuffed. As a result, McCardell missed two dressing changes. McCardell indicates that same day he was seen by medical personnel in the Chronic Care Clinic ("CCC") and his dressing was changed. On appeal, the Commissioner indicated Corizon's medical documentation was not sufficient to refute his claim that he did not refuse treatment and that he did require transportation by correctional officers because he was serving a segregation sentence at the time. The decision also states that it is McCardell's responsibility when he is on general population to make certain he is on the daily "pass list" to be taken to the medical unit for dressing changes, and that when a lock down occurs, a delay in dressing changes may occur. The ARP does not address the June 21, 2011 incident at issue here.

McCardell alleges he was denied medical care on June 21, 2011, between the hours of 4:00 a.m. and 1:00 p.m.  The uncontroverted medical record demonstrates that McCardell, who suffers chronic decubitus ulcers, received wound care on a regular basis during the month of June, 2011, typically every two to five days, during the evening hours.  ECF No. 20, Exhibits B, D-F, Medical Records of June 1, 6, 8, 10, 15, 17 and 21, 2011.

At about 8:30 on the evening of June 20, 2011, McCardell was seen by medical staff for an urgent care visit after reporting chest discomfort.  *Id.,* Exhibit C.  He was monitored for 30 minutes, after which his blood pressure measured 125/70 and he reported that his symptoms of chest pain had resolved.  Medical records do not indicate that he complained about his wound or sought a dressing change at that time.  *Id.*  McCardell did receive his regularly scheduled wound care at 9:58 the following evening, June 21, 2011, and again at 10:21 p.m. on June 22, 2011 *Id.,* Exhibits D and E.  Nothing suggests that the delay of one day worsened his condition, and no records support his claim that medical personnel were aware that he was in pain from his wound during this time.

Nothing in the record suggests that Joubert and Gilmore were involved in a conspiracy or cover-up to deprive McCardell of medical care because of his disability, or otherwise violated his Eighth Amendment right to medical care.  Indeed, neither Defendant appears to have provided medical care during the two-day period in question.

## IV.   Conclusion

For the aforementioned reasons, Defendants' Motions for Summary Judgment will be granted. A separate order follows.

Date:   October 5, 2012               /s/
                          DEBORAH K. CHASANOW
                          United States District Judge

6